No. 23-60408

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.

JESSIE BULLOCK,
Defendant-Appellee.

_____

Appeal from the United States District Court
For the Southern District of Mississippi
No. 3:18-cr-165-CWR-FKB-1
_____

## PETITION FOR REHEARING EN BANC

_____

**OMODARE B. JUPITER** (MS# 102054)
Federal Public Defender
N. and S. Districts of Mississippi
200 S. Lamar Street, Suite 200-N
Jackson, Mississippi 39201
Telephone:  (601) 948-4284
Facsimile:   (601) 948-5510

**MICHAEL L. SCOTT** (MS# 101320)
Senior Litigator

*Counsel for the Defendant-Appellee*
*Jessie Bullock*

# CERTIFICATE OF INTERESTED PERSONS
*United States v. Jessie Bullock*, No. 23-60408

The undersigned counsel of record certifies that the persons having an interest in the outcome of this case are those listed below:

1.      Jessie Bullock, Defendant-Appellee;

2.      Todd W. Gee, United States Attorney, Southern District of Mississippi, Jackson, Mississippi;

3.      Nicole M. Argentieri, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C.;

4.      Lisa H. Miller, Attorney, Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C.;

5.      Mahogane D. Reed, Attorney, Appellate Section, Criminal Division United States Department of Justice, Washington, D.C.;

6.      Gaines Cleveland, Appellate Chief, United States Attorney, Southern District of Mississippi, Jackson, Mississippi;

7.      Jennifer L. Case, Assistant United States Attorney, Southern District of Mississippi, Jackson, Mississippi;

8.      Omodare B. Jupiter, Federal Public Defender, Northern and Southern Districts of Mississippi, Jackson, Mississippi;

9.      Michael L. Scott, Senior Litigator, Office of the Federal Public Defender, Southern District of Mississippi, Jackson, Mississippi;

10.	Kimberly Golden Gore, former Research and Writing Specialist, Office of the Federal Public Defender, Southern District of Mississippi, Jackson, Mississippi;

11.	Victoria Elizabeth McIntyre, Research and Writing Specialist, Office of the Federal Public Defender, Southern District of Mississippi, Gulfport, Mississippi; and

12.	Honorable Carlton W. Reeves, United States District Judge, Jackson, Mississippi.

This certificate is made so that the judges of this Court may evaluate possible disqualification or recusal.

s/ *Michael L. Scott*
Senior Litigator

## INTRODUCTION AND RULE 35(b) STATEMENT

The panel decision conflicts with this Court's decision in *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), which established a framework to assess as-applied Second Amendment challenges to 18 U.S.C. § 922(g)(1), binding the panel to that analysis under this Circuit's rule of orderliness. Relying on the Supreme Court's decisions and principles established in in *New York Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Rahimi*, 144 S. Ct. 1889 (2024), this Court's precedent under *Diaz* requires that "the government must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [the defendant's]" to survive such a challenge. 116 F.4th at 467. The Government did not meet and was not held to this burden. Instead, the panel erroneously relied on *Rahimi* to justify Bullock's disarmament using a "dangerousness" standard rejected by this Court in *Diaz* and inapplicable to the binding Second Amendment analysis governing Bullock's lifetime firearms ban under § 922(g)(1).

The panel ignored this Court's binding precedent and created and applied its own test to reverse the district court's decision below and to support the permanent disarmament of Bullock under § 922(g)(1). En banc review is appropriate because the panel's decision conflicts with this Court's precedent as established by *Diaz*, as

well as binding Supreme Court precedent in *Bruen* and *Rahimi*. *See* FED. R. APP. P. 35(b)(1).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.......................................................... i

INTRODUCTION AND RULE 35(b) STATEMENT............................................ iii

TABLE OF CONTENTS ...................................................................................v

TABLE OF AUTHORITIES................................................................................ vi

ISSUE WARRANTING EN BANC REVIEW ......................................................1

ARGUMENT ....................................................................................................3

   I.   This panel is bound by *Diaz*, and the Supreme Court's decision in *Rahimi*, addressing a temporary disarmament premised upon a judicial determination of current dangerousness, cannot support Bullock's lifetime disarmament....4

   II.   The panel violated this Court's rule of orderliness by endorsing a "dangerousness" standard at odds with this Circuit's precedent in *Diaz* and the Supreme Court's precedent in *Bruen* and *Rahimi*. ....................................8

     A.   The Government did not meet its burden....................................................9

     B.   The panel's decision is at odds with *Diaz*. ................................................11

CONCLUSION ................................................................................................14

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ..................16

# TABLE OF AUTHORITIES

## Cases

*Binderup v. Att'y Gen.*, 836 F.3d 336 (3d Cir. 2016) ...................................................3

*Greenlaw v. United States*, 554 U.S. 237 (2008) ....................................................10

*Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375 (5th Cir. 2008).....................14

*New York Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022)
.............................................................................. iii, 2, 3, 4, 5, 10

*Swindle v. Livingston Par. Sch. Bd.*, 655 F.3d 386 (5th Cir. 2011) .........................11

*United States v. Colomb*, 419 F.3d 292 (5th Cir. 2005) .........................................10

*United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024) ............................. 7, 8, 13

*United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024)
......................................................... iii, 1, 2, 3, 4, 6, 7, 8, 9, 11, 13, 14

*United States v. Diaz*, No. 23-50452 (5th Cir. June 28, 2024).................................8

*United States v. Griffith*, 522 F.3d 607 (5th Cir. 2008).........................................11

*United States v. Rahimi*, 144 S. Ct. 1889 (2024) ................... iii, 2, 3, 4, 5, 6, 7, 9, 13

*United States v. Rahimi*, No. 22-915 (U.S. Nov. 7, 2023) .......................................7

*Woodson v. Surgitek, Inc.*, 57 F.3d 1406 (5th Cir. 1995) .......................................10

## Statutes

18 U.S.C. § 922(g)(1)...................................... iii, 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14

18 U.S.C. § 922(g)(3).......................................................................................13

18 U.S.C. § 922(g)(8)........................................................... 2, 4, 5, 6, 7, 13

An Act for the Punishment of Certain Crimes Against the United States,
1 Stat. 112 (1790).......................................................................................9, 12

FED. R. APP. P. 35 ............................................................................................ iv

## ISSUE WARRANTING EN BANC REVIEW

Whether under this Court's binding precedent in *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), an individual can be disarmed under 18 U.S.C. § 922(g)(1) where the Government does not prove a historical tradition of severe punishment specific to the defendant's predicate convictions.

## STATEMENT OF THE CASE

1. In 1992, Bullock got into a deadly "bar fight" and was convicted of aggravated assault and manslaughter. ROA.243 (order granting motion to dismiss), 370 (detention hearing). He served at least 15 years in state prison. ROA.243.

2. The Government alleged that in 2018, Bullock knowingly possessed a firearm after having been convicted of a felony, and he was charged by indictment with one count of violating § 922(g)(1). *See* ROA.321 (indictment), 324 (superseding indictment). Bullock was not arraigned until March 2020, about 18 months after he was indicted. ROA.244; *see* ROA.4 (minute entry dated March 27, 2020). Bullock was released on bond after a detention hearing wherein the magistrate judge found it "downright silly" to claim that Bullock posed a danger to anyone. ROA.371-73. The district court summarized the prosecution: "In Mr. Bullock's case, the conduct the government seeks to punish is Mr. Bullock's (alleged) knowing possession of a firearm in his home. It hasn't charged him with

brandishing a weapon, firing one, domestic violence, assault, or battery." ROA.283-84.

3.  After the Supreme Court's decision in *Bruen*, Bullock filed a motion to dismiss the indictment against him, arguing that under the Second Amendment, § 922(g)(1) was unconstitutional as applied to him. *See* ROA.135-43. The district court granted Bullock's motion to dismiss in a 77-page written order, ROA.239-315, determining that the Government had not met its burden of proof to demonstrate a historical tradition supporting the lifetime criminalization of Bullock's possession of a firearm, ROA.309.

4.  A panel of this Court reversed and remanded in an unpublished opinion. App. 1-3. The panel determined that because the Government summarily asserted that § 922(g)(1) "is part of the historical tradition of firearms possession," it did not forfeit its argument that § 922(g)(1) fits within the nation's historical tradition of firearm regulation. App. 2. The panel also allowed the government to provide additional legal support for its arguments on appeal. App. 2 (citing *Bruen*, 597 U.S. 1, 25 n.6).

Without applying the governing standard set out in *Diaz*, the panel relied upon *Rahimi*—a case concerning the constitutionality of 18 U.S.C. § 922(g)(8) under the Second Amendment—and various dissenting and concurring opinions to find that because "[t]he historical record demonstrates that legislatures have the power to

prohibit dangerous people from possessing guns," the permanent disarmament of Bullock, who "previously misused a firearm to harm others when he shot one individual" in 1992, "fits neatly within our Nation's historical tradition of firearm regulation." App. 2 (internal quotation marks and citations omitted). Rather than establish that Bullock's predicate convictions triggered severe and permanent Founding-era punishment like the death penalty or estate forfeiture, the panel found that "manslaughter and aggravated assault in this context constitute dangerous and violent crimes." App. 3 (citing *Binderup v. Att'y Gen.*, 836 F.3d 336, 374-75 (3d Cir. 2016) (Hardiman, J., concurring in part and concurring in the judgments)). It then determined that Bullock's conduct was relevantly similar to going armed laws, thus supporting a tradition of disarming people like Bullock under § 922(g)(1). App. 3.

5. On November 25, 2024—the same date that the panel issued its opinion—the Government filed a motion to reissues the unpublished opinion as published. ECF 81. Bullock filed a response in opposition. ECF 82.

## ARGUMENT

This panel is bound by *Diaz*, which considered the constitutionality of § 922(g)(1) with the benefit of the Supreme Court's decisions in *Bruen* and *Rahimi*. In *Diaz*, this Court established a new framework in considering an as-applied challenge to § 922(g)(1) under the Second Amendment in this Circuit: to survive such a challenge, the Government must demonstrate that the Nation has a

longstanding tradition of disarming someone with a criminal history analogous to [the defendant's]." 116 F.4th at 467. The Government did not meet that burden. Any alleged reliance on *Rahimi* as establishing a "dangerousness" standard to validly disarm an individual under § 922(g)(1), which the *Diaz* Court considered and rejected, cannot be used by this panel to constitutionally disarm Bullock.

Rather than engage in the historical analysis now mandated in this Circuit, the panel improperly applied a "dangerousness" standard upheld by the Supreme Court in *Rahimi* only where there is a judicial determination supporting a *temporary* firearm ban. The Court should grant en banc review to correct the panel's errors and to ensure uniformity with the standard governing constitutional disarmament under § 922(g)(1) in this Circuit.

**I.      This panel is bound by *Diaz*, and the Supreme Court's decision in *Rahimi*, addressing a temporary disarmament premised upon a judicial determination of current dangerousness, cannot support Bullock's lifetime disarmament.**

When a law impinges upon a right protected by the Second Amendment, it is presumptively unconstitutional, and the Government must demonstrate that the regulation is supported by this Nation's historical tradition of firearm regulation. *Bruen*, 597 U.S. at 17. The Supreme Court applied these principles to § 922(g)(8) in *Rahimi*. 144 S. Ct. at 1894. Section 922(g)(8)(C)(i) disarms individuals judicially determined to pose "a credible threat to the physical safety" of a protected person. In *Rahimi*, the Court held "only this": that "[a]n individual found by a court to pose

4

a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." 144 S. Ct. at 1903. In reaching that conclusion, the Court considered "going armed" and surety laws, finding a history supporting the claim that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1901. While the Court noted that such historical laws were not "identical" to § 922(g)(8), it determined that "[i]ts prohibition on the possession of firearms *by those found by a court to present a threat to others* fits neatly within the tradition the surety and going armed laws represent." *Id.* (emphasis added).

While the panel here relies on *Rahimi* to support a historical tradition of firearm regulations "barring people from misusing weapons to harm or menace others," App. 2 (quoting *Rahimi*, 144 S. Ct. at 1899), such justification does not support Bullock's lifetime disarmament under § 922(g)(1) due to his status as a felon. In *Rahimi*, the Court specifically distinguished the limitations of its holding, contrasting its decision to its prior holdings in *Bruen* and *District of Columbia v. Heller*, 554 U.S. 570 (2008). *See Rahimi*, 144 S. Ct. at 1901-02. It noted that unlike the regulation struck down in *Bruen*, § 922(g)(8) did not restrict arms by the public generally. *Id.* at 1901. It further noted that "Section 922(g)(8) applies only once a court has found that the defendant 'represents a credible threat to the physical safety' of another." *Id.* at 1901-02 (citing § 922(g)(8)(C)(i)). This judicial determination

was crucial: "That matches the surety and going armed laws, which involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Rahimi*, 144 S. Ct. at 1902.

Beyond the judicial determination, the ban in § 922(g)(8) was also saved by its temporal element: "Section 922(g)(8)'s restriction was temporary as applied to Rahimi," only prohibiting his firearm possession for the duration that he was subject to the restraining order. *Rahimi*, 144 S. Ct. at 1902. The fact that § 922(g)(8) "permits a court to disarm a person only if, after notice and hearing, it finds that he represents a credible threat to the physical safety of others," and only for as long as its order is in effect, allowed the Court to conclude that "in at least some applications, [§ 922(g)(8)] does not diminish any aspect of the right the Second Amendment was originally understood to protect." *Id.* at 1908-09 (Gorsuch, J., concurring). The narrow ruling in *Rahimi* allowing for temporary dispossession after a judicial determination that an individual is presently dangerous cannot support the permanent dispossession in status offenses like § 922(g)(1) that say nothing statutorily about being a present or current threat. A permanent ban on Bullock's possession of a firearm based on years ago adjudicated conduct does not "fit[] neatly" into this Circuit's binding precedent addressing § 922(g)(1) challenges.

This panel is bound by *Diaz*. In *Rahimi* and in *Diaz*, the Government advanced the same "dangerousness" argument endorsed by the panel here, and both

the Supreme Court and this Court rejected that argument and adopted narrower principles. The Supreme Court explicitly "reject[ed] the Government's contention" that an individual "may be disarmed simply because he is not 'responsible.'" *Rahimi*, 144 S. Ct. at 1903. It explained that "responsible" was "a vague term," and that "[i]t is unclear what such a rule would entail." *Id.* The Government admitted that "irresponsible" was essentially another way to say "dangerous." Tr. Of Oral Arg. 10-12, *United States v. Rahimi*, No. 22-915 (U.S. Nov. 7, 2023). And as previously explained, "dangerousness" was only relevant to *temporary* disarmament when considering a judicial determination of current dangerousness in the context of § 922(g)(8).

This Court is bound by its precedent rejecting the same dangerousness standard the panel endorses here. *See, e.g., United States v. Connelly*, 117 F.4th 269, 277 (5th Cir. 2024) ("Indeed, not one piece of historical evidence suggests that, at the time they ratified the Second Amendment, the Founders authorized Congress to disarm anyone it deemed dangerous."). In *Diaz*, this Court instead adopted a framework considering an individual's predicate conviction, and whether the Founding generation punished the underlying felony conviction by severe and permanent penalties like death or permanent estate forfeiture. 116 F.4th at 467-70. In this Court, the Government must prove that there is a longstanding tradition of

disarming someone with a criminal history analogous to [the defendant's]" to constitutionally permanently disarm him under § 922(g)(1). *Id.* at 467.

In so holding, this Court rejected laws cited by the Government as establishing a tradition of disarming "individuals with convictions for serious criminal conduct or who . . . are likely to present a special danger of firearm misuse." Gov't Supp. Br. 3, *United States v. Diaz*, No. 23-50452 (5th Cir. June 28, 2024). This Court declined to adopt that broad principle, instead adopting the narrower tradition the Government cited of severely punishing certain felonies.[1] The relevant analysis concerns the defendant's prior felony convictions and "criminal history," not the underlying conduct or whether an individual's crime may be classified as "dangerous." *Diaz*, 116 F.4th at 467.

## II. The panel violated this Court's rule of orderliness by endorsing a "dangerousness" standard at odds with this Circuit's precedent in *Diaz* and the Supreme Court's precedent in *Bruen* and *Rahimi*.

Rather than apply the law of this Circuit and hold the Government to its "heavy burden," *Connelly*, 117 F.4th at 274, to demonstrate a historical tradition of disarming an individual like Bullock, the panel recognized a historical record "that legislatures have the power to prohibit dangerous people from possessing guns," App. 3. It then held that "[t]here can be no doubt that manslaughter and aggravated

---

[1] The Court explained that misdemeanor convictions, dropped charges, and convictions that occurred contemporaneously with or after the instant § 922(g)(1) charge "are not relevant for our purposes." *Diaz*, 116 F.4th at 467.

assault in this context constitute dangerous and violent crimes." App. 3. Without addressing the Nation's historical tradition concerning Bullock's predicate felonies, the panel cited one act from 1790 "establishing that individuals convicted of murder on federal land 'shall suffer death.'" App. 3 (citing An Act for the Punishment of Certain Crimes Against the United States, 1 Stat. 112, 113 (1790)). Finally, it determined without justification that Bullock's violent conduct was "relevantly similar" to the "'prototypical affray [which] involved fighting in public,' the precursor to the 'going armed' laws punishable by arms forfeiture." App. 3 (quoting *Rahimi*, 144 S. Ct. at 1901). Relying on *Rahimi*, the panel held that the justification behind going armed laws supported "a tradition of disarming individuals like Bullock pursuant to § 922(g)(1), whose underlying convictions stemmed from the threat and commission of violence with a firearm." App. 3. This is not the test in this Circuit. The panel failed to apply the *Diaz* test governing this Court, and it did not hold the Government to its burden to demonstrate a historical tradition.

### A.  The Government did not meet its burden.

Under *Diaz*, the Government needed to demonstrate a historical tradition of severe and permanent punishment for Bullock's predicate felonies and that disarming Bullock fit within this tradition. 116 F.4th at 469-70. It entirely failed to do so. In the district court, the Government took the position throughout that it did not have to provide any historical analogues to justify its prosecution of Bullock

under § 922(g)(1).  *See* ROA.146-48, 189-97.  The district court found that the

Government failed to provide "any example of how American history supports

§ 922(g)(1), much less the number of examples *Bruen* requires to constitute a well-

established tradition.  ROA.306.  Instead, the Government summarily asserted "that

§ 922(g)(1) 'is part of the historical tradition of regulating firearms possession.'"

ROA.246-47 (quoting ROA.148).  Under the principle of party presentation, courts

are "entitled to decide a case based on the historical record compiled by the parties."

*Bruen*, 597 U.S. at 25 n.6; *see Greenlaw v. United States*, 554 U.S. 237, 243-44

(2008) (explaining that the Supreme Court "rel[ies] on the parties to frame the issues

for decision and assign[s] to courts the role of neutral arbiter of matters the parties

present")[2]  In the absence of any evidence of a historical tradition, the Government

failed to meet its burden of proof in the district court.  And its untimely and

frequently repeated and rejected "dangerous" arguments were denied both on the

merits and the basis of the party presentation principle endorsed by the Supreme

---

[2] "To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights."  *Id.* at 244 (internal citation omitted).  "But as a general rule, our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief."  *Id.* (cleaned up).  This must be "particularly" true for Government counsel, "the richest, most powerful, and best represented litigant to appear before [the court]."  *Id.* (internal quotation mark and citation omitted).

Moreover, "[a] district court has inherent power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *United States v. Colomb*, 419 F.3d 292 (5th Cir. 2005) (internal quotation marks and citations omitted); *see also Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (addressing inherent power of court to control its docket by dismissing case as sanction for failing to obey court order).

Court. ROA.307-09; *see Bruen*, 529 U.S. at 25 n.6 ("Courts are thus entitled to decide a case based on the historical record compiled by the parties.").

Even in this Court on appeal, the Government failed to "demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [Bullock]." *Diaz*, 116 F.4th at 467. Despite the panel's claim that the government did not forfeit its argument, App. 2, the Government failed to provide any historical laws establishing that Bullock's criminal history supported Founding-era death or permanent estate forfeiture, and its historical tradition argument should be waived under this Circuit's precedent, *see United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) ("[T]he failure to raise an issue on appeal constitutes waiver of that argument"); *see, e.g, Swindle v. Livingston Par. Sch. Bd.*, 655 F.3d 386, 392 n.6 (5th Cir. 2011). Not only did the panel provide the Government with "an unauthorized second bite at the apple," ROA.308, but in reversing the decision below it applied its own standard wholly at odds with binding precedent articulated in *Diaz*.

### B. The panel's decision is at odds with *Diaz*.

In justifying Bullock's disarmament under § 922(g)(1) the panel claims that "founding era law confirms that our country has a historical tradition of severely punishing individuals convicted of *homicide*, a prototypical common law felony considered a very dangerous offense." App. 3 (internal quotation marks and citations

omitted) (emphasis added). To arrive at this conclusion, the panel cited to the 1790 Crimes Act "establishing that individuals convicted of *murder on federal land* shall suffer death." *Id.* (internal quotation marks and citations omitted) (emphasis added). The panel erroneously conflates Bullock's 1992 manslaughter conviction stemming from a bar fight with the crime of murder on federal land. Moreover, the panel's cited 1790 Crimes Act specifically provided for a maximum three-year sentence of imprisonment for manslaughter—the actual crime of Bullock's prior conviction. 1790 Crimes Act, at 113 (1790) (First Congress establishing that individual convicted of *manslaughter* on federal land "shall be imprisoned not exceeding three years, and fined not exceeding one thousand dollars"). Thus, the panel's own evidence conflicts with the mandate of *Diaz*, demonstrating that there is no relevant historical tradition of severe and permanent punishment based on Bullock's criminal history that can justify his permanent disarmament under § 922(g)(1). *See Diaz*, 116 F.4th at 467-70.

Additionally, the panel's reference to "affray" and "going armed" laws punishable by arms forfeiture do not support Bullock's dispossession under § 922(g)(1), and they are odds with the reasoning in *Diaz*. *See* App. 3. In *Rahimi*, going armed laws were relevant to both the "how" and the "why" questions. The laws applied only "once a court has found that the defendant represents a credible threat to the physical safety of another," and violation of going armed laws could

result in imprisonment, justifying the lesser restriction of temporary disarmament (the "how"). *Diaz*, 116 F.4th at 464 (quoting *Rahimi*, 144 S. Ct. at 1901-02). Yet the "why" that justified § 922(g)(8) in *Rahimi* did not justify § 922(g)(1) in *Diaz*. Instead, to address the "why," *Diaz* relied solely on historical evidence of severely punishing felons at the Founding. *Diaz*, 116 F.4th at 468-69; *see id.* at 471 n.5 ("We focus on [going armed] laws to address the 'how' of colonial-era firearm regulation, rather than the 'why,' which is supported by other evidence."); *see also Connelly*, 117 F.4th at 272 (explaining that going-armed laws were not relevantly similar to 18 U.S.C. § 922(g)(3) because it "is not limited to those judicially determined to have had a history of violent behavior.").

The *Diaz* Court's mere reference to going armed laws was not an endorsement of "a tradition of disarming individuals like Bullock . . . whose underlying convictions stemmed from the threat and commission of violence with a firearm." App. 3. *Diaz* required the Government to demonstrate that an individual's prior convictions were analogous to Founding-era felonies punishable by death and/or permanent estate forfeiture. Without historical evidence that Bullock's criminal history was punishable by death and/or permanent estate forfeiture, this Court's decision in *Diaz* holds that he cannot be disarmed.

## CONCLUSION

The rule of orderliness in this Circuit mandates that the panel follow the test outlined in *Diaz*.  *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).  This means that to constitutionally disarm Bullock under § 922(g)(1), the Government needed to demonstrate a historical tradition of severely and permanently punishing someone with a criminal history like his.  *See Diaz*, 116 F.4th at 468-70.  The district court determined that the Government failed to meet this burden and to establish such a tradition.  ROA.309.  Not only did it fail to timely make such arguments, but the arguments it made did not address its burden of proof and were unpersuasive.  *See* ROA.308-09; *Diaz*, 116 F.4th at 468-70.

To reverse the district court's decision, the panel eschewed this Circuit's rule of orderliness and the teachings of *Diaz* in favor of its own analysis.  In essence, the panel determined that because historically legislatures could prohibit dangerous people from possessing guns, and because Bullock's prior felonies broadly *can* constitute dangerous and violent crimes, Bullock can be constitutionally disarmed. Beyond the factual issues concerning the panel's equivalency of murder on federal land to Bullock's 1992 manslaughter conviction stemming from a bar fight, as well as its implicit determination that Bullock remains dangerous in light of myriad evidence to the contrary, *see, e.g.,* ROA.240 (Bullock "finished serving his sentence long ago, and the available evidence indicates that the firearm the government

complains of was kept in the sanctity of his home"), 244 (indicating that the magistrate judge thought it "downright silly" that Bullock posed a danger to his wife, or anyone else and indicating that Bullock remained on bond for years without incident), this is not the test that the panel is bound by. The panel wholly failed to apply the standard and framework set forth in *Diaz*—the controlling precedent in this Circuit—and instead endorsed its own "dangerousness" test previously rejected by the Supreme Court and this Court in *Diaz*. En banc review is necessary to reconcile this panel's decision with the law of this Court.

Respectfully submitted,

OMODARE B. JUPITER
Federal Public Defender

/s/ *Michael L. Scott*
MICHAEL L. SCOTT
Senior Litigator
Office of the Federal Defender
Southern District of Mississippi
200 S. Lamar Street, Suite 200-N
Jackson, Mississippi 39201
Telephone: (601) 948-4284
Facsimile: (601) 948-5510

*Attorney for Defendant-Appellee*
*Jessie Bullock*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

I, Michael L. Scott, on this 9th day of December, hereby certify that:

1.      This document complies with the word limit requirement of FED. R. APP. P. 35(b)(2)(A) because, excluding the parts of the document exempted BY FED. R. APP. P. 32(f), this document contains 3,774 words.

2.      This document complies with the typeface requirements of FED R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman in body text and 12-point in footnotes.

/s/ *Michael L. Scott*
MICHAEL L. SCOTT
Senior Litigator
*Attorney for Defendant-Appellee*

**APPENDIX**

*United States v. Bullock*, No. 23-60408 (5th Cir. Nov. 25, 2024)

# United States Court of Appeals for the Fifth Circuit

---

No. 23-60408

---

United States Court of Appeals
Fifth Circuit

**FILED**

November 25, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellant,*

*versus*

JESSIE BULLOCK,

*Defendant—Appellee.*

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:18-CR-165-1

---

Before JONES, WILLETT, and ENGELHARDT, *Circuit Judges.*

PER CURIAM:[*]

In August 2018 Jessie Bullock was indicted by a grand jury for unlawfully possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). He moved to dismiss the indictment. He argued that, as applied to him, § 922(g)(1) violates the Second Amendment. The district court

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

granted Bullock's motion and dismissed the indictment with prejudice. The government now appeals.

Bullock has numerous felony convictions. For example, he was convicted in 1994 for aggravated assault and manslaughter after, following an altercation, he shot an unarmed bar bouncer, fired a "barrage of bullets" into a nearby crowd, and killed a nineteen-year-old passerby. He was sentenced to ten years of imprisonment for the aggravated assault conviction and twenty years of imprisonment for the manslaughter conviction.

As a threshold matter, the government did not forfeit its argument that § 922(g)(1) fits within this nation's historical tradition of firearm regulation. Notwithstanding Bullock's argument to the contrary, the government did argue in the district court that § 922(g)(1) "is part of the historical tradition of regulating firearms possession." Because the Second Amendment analysis is a legal inquiry into the text and history related to the relevant regulation, the government may provide additional legal support for its arguments on appeal. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 25 n.6, 142 S. Ct. 2111, 2130 (2022); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99, 111 S. Ct. 1711, 1718 (1991) (citation omitted).

In light of recent precedent, the district court erred when it held that § 922(g)(1) violates the Second Amendment as applied to Bullock. "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *United States v. Rahimi*, 144 S. Ct. 1889, 1899 (2024). Here, Bullock previously misused a firearm to harm others when he shot one individual, fired into a crowd of others, and in the process killed an innocent passerby. A ban on his ability to possess a firearm "fits neatly" within our Nation's historical tradition of firearm regulation. *See id.* at 1898–902.

No. 23-60408

The historical record demonstrates "that legislatures have the power to prohibit dangerous people from possessing guns." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (BARRETT, J., dissenting); *see also Folajtar v. Att'y Gen.*, 980 F.3d 897, 912 (3d Cir. 2020) (BIBAS, J., dissenting) ("The historical touchstone is danger[.]").    There can be no doubt that manslaughter and aggravated assault in this context constitute dangerous and violent crimes.  *See Binderup v. Att'y Gen.*, 836 F.3d 336, 374–75 (3d Cir. 2016) (HARDIMAN, J., concurring in part and concurring in the judgments).  Unsurprisingly, founding era law confirms that our country has a historical tradition of severely punishing individuals convicted of homicide, a prototypical common law felony considered a "very dangerous offense[]." *Id.* at 374; *see, e.g.*, An Act for the Punishment of Certain Crimes Against the United States, 1 Stat. 112, 113 (1790) (First Congress establishing that individuals convicted of murder on federal land "shall suffer death."). Bullock's violent conduct here is also "relevantly similar" to, and arguably more dangerous than, the "prototypical affray [which] involved fighting in public," the precursor to the "going armed" laws punishable by arms forfeiture.  *Rahimi*, 144 S. Ct. at 1901.  And the justification behind going armed laws, to "mitigate demonstrated threats of physical violence," supports a tradition of disarming individuals like Bullock pursuant to § 922(g)(1), whose underlying convictions stemmed from the threat and commission of violence with a firearm.  *Id.*; *see United States v. Diaz*, 116 F.4th 458, 470 n.5 (5th Cir. 2024).

Bullock, convicted of aggravated assault and manslaughter from his use of a firearm, may be constitutionally dispossessed of a firearm pursuant to 18 U.S.C. § 922(g)(1).  The judgment of the district court is accordingly REVERSED, and the prosecution is REMANDED for further proceedings.