# United States Court of Appeals
# for the Fifth Circuit

---

No. 23-60408

---

United States Court of Appeals
Fifth Circuit

**FILED**

November 25, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellant,*

*versus*

JESSIE BULLOCK,

*Defendant—Appellee.*

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:18-CR-165-1

---

Before JONES, WILLETT, and ENGELHARDT, *Circuit Judges.*

PER CURIAM:[*]

In August 2018 Jessie Bullock was indicted by a grand jury for unlawfully possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). He moved to dismiss the indictment. He argued that, as applied to him, § 922(g)(1) violates the Second Amendment. The district court

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

granted Bullock's motion and dismissed the indictment with prejudice. The government now appeals.

Bullock has numerous felony convictions. For example, he was convicted in 1994 for aggravated assault and manslaughter after, following an altercation, he shot an unarmed bar bouncer, fired a "barrage of bullets" into a nearby crowd, and killed a nineteen-year-old passerby. He was sentenced to ten years of imprisonment for the aggravated assault conviction and twenty years of imprisonment for the manslaughter conviction.

As a threshold matter, the government did not forfeit its argument that § 922(g)(1) fits within this nation's historical tradition of firearm regulation. Notwithstanding Bullock's argument to the contrary, the government did argue in the district court that § 922(g)(1) "is part of the historical tradition of regulating firearms possession." Because the Second Amendment analysis is a legal inquiry into the text and history related to the relevant regulation, the government may provide additional legal support for its arguments on appeal. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 25 n.6, 142 S. Ct. 2111, 2130 (2022); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99, 111 S. Ct. 1711, 1718 (1991) (citation omitted).

In light of recent precedent, the district court erred when it held that § 922(g)(1) violates the Second Amendment as applied to Bullock. "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *United States v. Rahimi*, 144 S. Ct. 1889, 1899 (2024). Here, Bullock previously misused a firearm to harm others when he shot one individual, fired into a crowd of others, and in the process killed an innocent passerby. A ban on his ability to possess a firearm "fits neatly" within our Nation's historical tradition of firearm regulation. *See id.* at 1898–902.

No. 23-60408

The historical record demonstrates "that legislatures have the power to prohibit dangerous people from possessing guns." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting); *see also Folajtar v. Att'y Gen.*, 980 F.3d 897, 912 (3d Cir. 2020) (Bibas, J., dissenting) ("The historical touchstone is danger[.]").    There can be no doubt that manslaughter and aggravated assault in this context constitute dangerous and violent crimes.  *See Binderup v. Att'y Gen.*, 836 F.3d 336, 374–75 (3d Cir. 2016) (Hardiman, J., concurring in part and concurring in the judgments).  Unsurprisingly, founding era law confirms that our country has a historical tradition of severely punishing individuals convicted of homicide, a prototypical common law felony considered a "very dangerous offense[]." *Id.* at 374; *see, e.g.*, An Act for the Punishment of Certain Crimes Against the United States, 1 Stat. 112, 113 (1790) (First Congress establishing that individuals convicted of murder on federal land "shall suffer death."). Bullock's violent conduct here is also "relevantly similar" to, and arguably more dangerous than, the "prototypical affray [which] involved fighting in public," the precursor to the "going armed" laws punishable by arms forfeiture. *Rahimi*, 144 S. Ct. at 1901.  And the justification behind going armed laws, to "mitigate demonstrated threats of physical violence," supports a tradition of disarming individuals like Bullock pursuant to § 922(g)(1), whose underlying convictions stemmed from the threat and commission of violence with a firearm. *Id.*; *see United States v. Diaz*, 116 F.4th 458, 470 n.5 (5th Cir. 2024).

Bullock, convicted of aggravated assault and manslaughter from his use of a firearm, may be constitutionally dispossessed of a firearm pursuant to 18 U.S.C. § 922(g)(1).  The judgment of the district court is accordingly REVERSED, and the prosecution is REMANDED for further proceedings.